UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 9-54-B-W |
| | ) | |
| CURTIS TODD ZETTERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDED DECISION**

Curtis Zetterman, who is charged with possession of a firearm after having been committed to a mental institution, has moved to suppress the firearm seized from his residence following a warrantless search and seizure on October 20, 2008. The United States seeks to justify the search based upon exigent circumstances associated with the commission of a violent crime. An evidentiary hearing was held on November 12, 2009. I now recommend the court adopt the following proposed findings of fact and deny the motion to suppress.

**Proposed Findings of Fact**

On October 20, 2008, at approximately 5:35 p.m., Brian Gorneault called the Caribou Police Department and claimed that Curtis Zetterman pointed a gun at him as Gorneault was attempting to enter his former sister-in-law's apartment. Caribou Police Officer Douglas Bell received the information from police dispatch. Bell was familiar with Mr. Zetterman because of prior complaints from both Zetterman and others in the neighborhood involving various allegations by Zetterman of neighbors spying on him and resulting arguments and confrontations. Bell had also investigated Zetterman in regard to a check writing issue.

Bell immediately responded to the October 20, 2008, call and found Gorneault waiting for him. According to Gorneault, he had previous encounters with Zetterman where Curtis

would show the gun, but this time Curtis had pointed it at him. Gorneault described the gun as a small gun with two barrels. Gorneault explained to Bell that when he tried to open the door to the adjacent apartment, Zetterman came out and accused Gorneault of attempting to gain illegal entry. Gorneault told Zetterman that he frequently entered the apartment and he has a key. Gorneault told the officer that Zetterman had looked at him while holding the gun. The gun was in his right hand and pointed directly at Gorneault. Although Gorneault did not accuse Zetterman of saying anything threatening, when Bell asked Gorneault whether he felt threatened, Gorneault responded, "Wouldn't you if someone pointed a gun at you?"

After advising Gorneault to stand back, Bell went to the door and knocked. He had to knock several times and then holler Zetterman's name. Finally, Zetterman asked who was knocking and Bell identified himself as a police officer. The door to the apartment contained a rather large glass window and Bell did not want to be visible to the occupants of the apartment. Bell was standing to the side of the door, firearm at the ready, when Zetterman opened the door. Bell could see both of Zetterman's hands so he holstered his weapon. Corey Sautier, another Caribou police officer, arrived at the scene and walked up behind Officer Bell.

Bell asked Zetterman whether he had a small handgun. Zetterman said he did. Bell then asked whether Zetterman had pointed the gun at anyone. Zetterman denied doing so. Bell asked to see the gun and whether Zetterman had it on his person. Zetterman said the gun was inside his apartment. Bell told Zetterman that he needed to see the gun and that he wanted to secure it before they continued talking. Zetterman refused to comply at first, but then said that he would get it. Zetterman tried to shut the door at this point, but Bell stopped him by blocking the door with his foot. Bell told Zetterman to tell him the gun's location in order for the officer to retrieve

2

it, but Zetterman proceeded to walk away from the door toward the interior of the apartment, presumably to get the gun.

Bell and Zetterman walked through the kitchen into a small bedroom that had a mattress and several boxes. Zetterman started to reach into the box and Bell told him to stop. Zetterman continued to reach toward the box. Bell drew his weapon and moved slightly so that he was not standing where Zetterman had last seen him. Bell repeatedly told Zetterman to leave the gun in order for the officer to retrieve it. Zetterman's hand brought something out of the box and dropped it on the blanket, telling Bell to get it. Bell holstered his weapon and asked Zetterman to wait with the other officer in the kitchen. After Zetterman went to the kitchen, Bell leaned forward and saw a derringer on the bed. He picked it up, found the lever to open it, and found two live rounds in the barrels.

Based on the officer's investigation and assessment of the situation, in his opinion Zetterman's conduct toward Gorneault was not justified. Bell placed Zetterman under arrest for criminal threatening with a firearm. After review by a state prosecutor, Zetterman was charged with both criminal threatening with a weapon and reckless conduct. Once he returned to the police station Bell learned of an October 2006 incident at Zetterman's apartment involving the Caribou Police Department and a different firearm. As a result of that incident, Zetterman had been temporarily, involuntarily committed to a mental hospital.

## Discussion

Under well settled Fourth Amendment principles, "[a] warrantless search of a private residence is presumptively unreasonable." United States v. Tibolt, 72 F.3d 965, 968 (1st Cir. 1995). However, there are exceptions to this general rule and not every search of a residence without a warrant necessarily violates the Fourth Amendment. United States v. Lawlor, 406 F.3d

37, 41 (1st Cir. 2005).  In order to justify a warrantless entry to search for weapons there must be exigent circumstances, even in circumstances where a felony has been committed and there is probable cause to believe that incriminating evidence will be found within the residence.  Payton v. New York. 445 U.S. 573, 587-88 (1980).  The government bears the burden of demonstrating that exigent circumstances exist.  United States v. Baldacchino, 762 F.2d 170, 176 (1st Cir. 1985).  "Exigent circumstances" exist in conjunction with an arrest in a residence when there is "an urgent need for immediate action that overrides the inevitable delay incident to obtaining a warrant." Id. (quoting United States v. Blake, 632 F.2d 731, 733 (9th Cir. 1980)).

     In this case Officer Bell knew that Zetterman had a history of neighborhood disturbances, and based on Gorneault's account, he had probable cause to believe that Zetterman had committed criminal threatening with a dangerous weapon, a Class C felony under Maine law. 17-A M.R.S. §§ 209, 1252(4).  He could not leave Zetterman in his apartment while seeking warrants for his arrest and to search the residence because of the immediate concern about what Zetterman might do next.  His only logical first step was to speak with Zetterman in order to better assess the situation.  Once Zetterman acknowledged that he did have a firearm in the apartment and announced that he would retrieve it for Bell, the situation potentially became even more worrisome.  Allowing Zetterman to go retreat behind closed doors and secure the weapon himself simply involved too great a risk of harm to Zetterman, the officers on the scene, and others in the apartment building, including Gorneault.  In my view, the scene that unfolded in front of Officer Bell was a classic example of "exigent circumstances," not of the officer's own making.  When Bell asked Zetterman for his consent to come into the apartment and get the gun, he had no idea that Zetterman's response would be other than yes or no.  If Zetterman had refused to produce the gun, Bell's recourse would have been to place him under immediate arrest

and secure the premises to get a warrant. If Zetterman had consented to allow Bell to enter, he could have gotten the derringer pursuant to consent. Instead, Bell confronted an unexpected exigency – Zetterman agreed to get the gun, announcing that he would do it himself and attempting to shut Bell out of the apartment. He had no option but to prevent Zetterman from closing the door and to continue following him across the small kitchen and into the back bedroom. Until Bell was in the apartment, he did not know if there was anyone else there or exactly where the gun would be located.

Bell did not engage in a wholesale search of the premises. He sought and obtained the handgun that apparently had been the subject of Gorneault's complaint. In fact, Bell was led to the gun by Zetterman, who "voluntarily" surrendered the weapon. Bell's decision to follow Zetterman, once Zetterman announced his intention to retrieve the gun, was certainly less intrusive than placing Zetterman under immediate arrest by forcefully stopping him from going into the bedroom, removing him from the premises, securing the premises, obtaining a search warrant, returning to the premises, and conducting a wholesale search of the entire apartment in an attempt to locate the small derringer hidden in some boxes stuffed with various articles of clothing and other items. To label Bell's actions as unreasonable would be nonsensical. He took the only avenue open to him given the evolving circumstance confronting him. Compare United States v. Lopez, 989 F.2d 24, 26-27 (1st Cir. 1993) (observing that the existence of a dangerous weapon recently used in a threatening manner presents an exigent circumstance where suspect retreats into premises upon show of police authority, and that a "proportionate" effort to recover the weapon, "limited in its range, specific in its object," is justified); with United States v. Weidul, 227 F. Supp. 2d 161, 165-166 (D. Me. 2002) (Mag. J. Rec. Dec., adopted over objection) (rejecting claim of exigent circumstances where sole individual who could reasonably

5

be perceived as a threat was in custody at the time of the search and officers could have secured the premises while obtaining a warrant), aff'd, 325 F.3d 50, 54 (1st Cir. 2003) (rejecting Government's alternative argument pursued on appeal).

## Conclusion

Based upon the foregoing, I recommend the Court deny the motion to suppress.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 16, 2009