UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-09-54-B-W |
| | ) | |
| CURTIS TODD ZETTERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

Charged with possession of a firearm after having been committed to a mental institution, a violation of 18 U.S.C. § 922(g)(4), Curtis Todd Zetterman moved to suppress the firearm seized from his residence on October 20, 2008, following a warrantless search and seizure. *Def.'s Mot. to Supp. Evidence Obtained as a Result of Search and Seizure and Accompanying Memo*. (Docket # 17) (*Def.'s Mot.*)  Although the Court agrees that there are some minor factual mistakes in the Recommended Decision, the Court affirms the Magistrate Judge's recommendation and denies the Defendant's motion to suppress.

**I.     OVERVIEW**

On November 16, 2009, the United States Magistrate Judge filed with the Court her Recommended Decision in which she recommended that the Court deny Mr. Zetterman's motion.  *Recommended Decision* (Docket # 27) (*Rec. Dec.*).  Mr. Zetterman filed his objection to the Recommended Decision on December 10, 2009.  *Def.'s Objections to Report and Recommendation* (Docket # 37) (*Def.'s Ob.*).  The Government responded on December 21, 2009.  *Gov't's Resp. to Def.'s Objections to Report and Recommendation* (Docket # 41) (*Gov't's Resp.*).  The Court has reviewed and considered the Magistrate Judge's Recommended Decision,

together with the entire record, and has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision.

## II.   DISCUSSION

### A.   Factual Objections

Mr. Zetterman makes three objections to the facts found by the Magistrate Judge. First, Mr. Zetterman objects to the Magistrate Judge's finding that prior complaints were made by "others in the neighborhood" and that there were "resulting arguments and confrontations." *Def.'s Ob.* at 2. Second, he objects to the implication that Mr. Zetterman intentionally pointed the gun at Mr. Gorneault, based on the Magistrate Judge's finding that "[t]he gun was in [Mr. Zetterman's] right hand and pointed directly at Gorneault." *Id.* Finally, Mr. Zetterman objects to the Magistrate Judge's description of his conversation with Officer Bell before Officer Bell's entry. *Id.* at 3-4.

#### 1.   Prior Complaints By Neighbors and Arguments and Confrontations

The Magistrate Judge stated in her recommended decision that "Bell was familiar with Mr. Zetterman because of prior complaints from both Zetterman *and others in the neighborhood* involving various allegations by Zetterman of neighbors spying on him *and resulting arguments and confrontations*." *Rec. Dec.* at 1. (emphasis supplied). She later discussed this finding:

> In this case Officer Bell knew that Zetterman had a history of neighborhood disturbances, and based on Gorneault's account, he had probable cause to believe that Zetterman had committed criminal threatening with a dangerous weapon, a Class C felony under Maine law.

*Id.* at 4. The Magistrate Judge considered Mr. Zetterman's "prior history of neighborhood disturbances" in drawing the conclusion that Officer Bell was faced with exigent circumstances justifying the warrantless search and seizure. *Id.* at 4.

Mr. Zetterman "objects to the italicized portion of this finding as not supported by the record." *Def.'s Ob*. at 2. Specifically, Mr. Zetterman objects to "the finding that there were prior complaints by others in the neighborhood about Mr. Zetterman . . ., as well as the finding that there were any prior arguments or confrontations." *Id.*

The Court has thoroughly reviewed Officer Bell's testimony from the suppression hearing, and finds two relevant references:

> Q.  Would you describe for us, at least generally, how familiar you were with Mr. Zetterman up to that time?
> A.  Um, quite familiar with Mr. Zetterman.  We've dealt with numerous complaints where Mr. Zetterman is making complaints of people staring in his apartment.  He is hearing strange noises.  We have had some incidents where he's had some issues with check writing, but the majority of the complaints that we've dealt with him were at his apartment on Washburn Street and it's typically he is making a report of incidents taking place which, in fact, they aren't.  There have been numerous occasions where we have contacted somebody with either adult protective - - there have been times when he's needed to seek an evaluation.

*Tr.* 5:17-25; 6:1-6. (Docket # 32).  The second is:

> Q.  The Court:  I have a question and maybe I just missed it.  You indicated that you had been there on prior complaints initiated primarily by Mr. Zetterman; is that correct?
> A.  That's correct.  Um, from Mr. Zetterman or from a neighbor.

*Id.* 42:19-24.

Turning first to Mr. Zetterman's objection as to whether there were prior complaints by others in the neighborhood about him, the record clearly reflects that Officer Bell had received a prior complaint from a neighbor; whether there were prior complaints from neighbors is not as clear.  To err on the side of caution, however, the Court sustains Mr. Zetterman's objection and makes the following amended finding: "Officer Bell was familiar with Mr. Zetterman because he had been to Mr. Zetterman's apartment in response to prior complaints from Mr. Zetterman or from a neighbor."

3

Mr. Zetterman's next objection is to the finding that Officer Bell was aware of "resulting arguments and confrontations." This objection is sustained. Although Officer Bell's reference to "prior complaints from Mr. Zetterman or from a neighbor" could be interpreted as implying past arguments and confrontations, in deference to Mr. Zetterman, the record does not clearly reflect evidence of prior arguments and confrontations, and the Court will not consider this finding in its review of the Recommended Decision.

Thus, the Court treats the Magistrate Judge's later description of Mr. Zetterman's "history of neighborhood disturbances" as a more restrictive reference to Mr. Zetterman's repeated complaints, and one prior complaint from one neighbor without any evidence of prior arguments and confrontations. At the same time, the Court observes that the record establishes that Officer Bell was aware of Mr. Zetterman's mental issues.[1] The Court interprets the Magistrate Judge's reference to the "history of neighborhood disturbances" to include the Officer's knowledge of the Defendant's history of mental instability.

### 2.  Intentional Gun Pointing

In the Recommended Decision, the Magistrate Judge wrote:

> Bell immediately responded to the October 20, 2008 call and found Gorneault waiting for him. According to Gorneault, he had previous encounters with Zetterman where Curtis would show the gun, but this time Curtis had pointed it at him. Gorneault described the gun as a small gun with two barrels. Gorneault explained to Bell that when he tried to open the door to the adjacent apartment, Zetterman came out and accused Gorneault of attempting to gain illegal entry. Gorneault told Zetterman that he frequently entered the apartment and he had a key. Gorneault told the officer that Zetterman had looked at him while holding the gun. The gun was in his right hand and pointed directly at Gorneault. Although Gorneault did not accuse Zetterman of saying anything threatening, when Bell asked Gorneault whether he felt threatened, Gorneault responded, "Wouldn't you if someone pointed a gun at you?"

---

[1]  In addition to Officer Bell's testimony that "[t]here have been numerous occasions where we have contacted somebody with either adult protective – there have been times when he's [Mr. Zetterman] needed to seek an evaluation," *tr*. 6:3-6. Officer Bell also testified that based on his prior dealings with Mr. Zetterman, Mr. Zetterman had a "mental instability." *Tr*. 16: 4-6.

*Rec. Dec.* at 1-2.  Later, the Magistrate Judge concluded that Officer Bell "had probable cause to believe that Zetterman had committed criminal threatening with a dangerous weapon, a Class C felony under Maine law. 17-A M.R.S.A. § 209, 1252(4)." *Id.* at 4.

Mr. Zetterman objects to "the implication in this recounting of the facts that Gorneault accused Zetterman of intentionally pointing a gun at him." *Def.'s Ob.* at 2.  Mr. Zetterman's objection is not well taken.  The record reflects that while Mr. Zetterman was accusing Mr. Gorneault of attempting to gain illegal entry into an apartment, Mr. Zetterman pointed a handgun directly at Mr. Gorneault.  During the suppression hearing, Officer Bell testified numerous times that the gun was pointed at Mr. Gorneault.  *See Tr.* 8:24-25; 9:1 ("[Mr. Gorneault] noticed a small handgun with two barrels pointed directly at him."); *see also Tr.* 9:8; 28:2; 22:24-25; 23:1.  Based on Officer Bell's testimony, the Magistrate Judge's statement that "[t]he gun was in [Mr. Zetterman's] right hand and pointed directly at Gorneault," fairly and accurately describes this incident.  *Rec. Dec.* at 2.

Under Maine law, to be convicted of criminal threatening, the "State must prove either that the defendant's purpose was to place the victim in fear or that the defendant knew it was practically certain that the victim would be placed in fear." *State v. Thibodeau*, 686 A.2d 1063, 1064 (Me. 1996).  Maine law does not require that the "victim's fear be objectively reasonable." *Id.*  In this case, Mr. Zetterman came out of his apartment, accused Mr. Gorneault of attempting to break into a nearby apartment, pointed a gun directly at him, and Mr. Gorneault rhetorically confirmed that he felt threatened by Mr. Zetterman's action.  The Magistrate Judge properly found that the circumstances were sufficient for the officer to have probable cause to believe that Mr. Zetterman had committed the offense of criminal threatening with a dangerous weapon.

Mr. Zetterman's objection on this finding is overruled.

### 3.  The Doorstep Conversation

Finally, Mr. Zetterman objects to the Magistrate Judge's description of the conversation between Officer Bell and Mr. Zetterman prior to Officer Bell's entry.[2]  *Def.'s Ob*. at 3.  He objects to the order of events and omission of important facts.  *Id*.  There are some differences between Officer Bell's testimony and the Magistrate Judge's findings.[3]  But, these differences are minor and not material to resolving whether exigent circumstances existed.  Mr. Zetterman's objection to the factual findings on this matter is therefore overruled.

### B.  Legal Objections

Mr. Zetterman argues that "the Magistrate Judge's finding that 'the scene that unfolded in front of Officer Bell was a classic example of 'exigent circumstances,' not of the officer's own making' is unsupported by the record."  *Def.'s Ob*. at 8.  The Court, however, agrees with the Magistrate Judge's conclusion that exigent circumstances arose when "[Mr.] Zetterman agreed to

---

[2]  Officer Bell testified the following occurred after Mr. Zetterman opened the door:
   I asked him if he had – if he had threatened Mr. Gorneault.  I asked him if he had a firearm.  He denied it at first and then admitted that he did, in fact, have a gun.  I asked him if he had it on him and he said no.
   It was during that exchange that Officer Saucier then arrived and was with me on that particular call.  [Mr. Zetterman] was willing – I told him that we weren't doing anything until the weapon was secure.  I needed to make sure it was a safe scene.
Q:   When you told that to Mr. Zetterman, did he respond to that in anyway?
A:   Yes, he said he would go get it.
Q:   And when Mr. Zetterman told you that he would go get it, did you respond in anyway?
A:   Yes.  I asked him to simply tell me where it was and let me secure the weapon and then we could discuss further – at that point he said he would go get it and he stepped back into the apartment and tried to shut the door on me.  I stuck my foot forward and prevented the door from closing.
   *Tr*. 12:22-25; 13:1-17.

[3]  The differences between the Magistrate Judge's recitation of the facts and the Officer's testimony are: 1) Officer Bell testified that he first asked Mr. Zetterman if he had threatened Mr. Gorneault, and then asked if he had a gun, *Tr*. 12:22-23, not that he first asked Mr. Zetterman if he had a gun, and then asked whether he pointed the gun at anyone, *Rec. Dec*. at 2; 2) Officer Bell never stated that he needed to "see" the gun, *Rec. Dec*. at 2; and, 3) Mr. Zetterman stated he would get the gun in response to Officer Bell's statement that he needed to secure the weapon, *Tr*. 13:12-14, not after he refused to comply with the Officer.  *Rec. Dec*. at 2.
   With regard to the first point, the Officer's testimony was condensed and the Court does not view his description as being a precise chronological recitation.  With regard to the second point, obviously in order to secure the weapon, the Officer would need to see it.  With regard to this last point, Mr. Zetterman claims that after offering to retrieve the firearm "[he] did not simply turn and enter his apartment without any warning."  *Def.'s Ob*. at 5.  Based on Officer Bell's testimony, however, that is, in fact, what occurred.  *Tr*. 13:14-16; 29:15-17.

get the gun, announcing that he would do it himself and attempting to shut [Officer] Bell out of the apartment." *Rec. Dec.* at 5.

Officer Bell had been informed by police dispatch that Mr. Zetterman was outside of his apartment and had threatened somebody with a firearm. *Tr.* 7:12-16. At the scene, Officer Bell met with Mr. Gorneault and learned that Mr. Zetterman had come to his front door with a gun when Mr. Gorneault attempted to enter his ex-wife's apartment. *Tr.* 8:14-18. Mr. Gorneault had previous encounters with Mr. Zetterman exiting his apartment with a gun in his hand, but this was the first time Mr. Zetterman had pointed the gun at Mr. Gorneault. *Tr.* 9:5-8. When Officer Bell asked Mr. Gorneault whether Mr. Zetterman had threatened him with the gun, Mr. Gorneault responded, no, but then stated that "if somebody pointed a gun at you, wouldn't you feel threatened?" *Tr.* 9:11-12.

Officer Bell was also familiar with Mr. Zetterman having responded to complaints made by Mr. Zetterman, *tr.* 5:19-22, and he believed Mr. Zetterman had a "mental instability." *Tr.* 16:5. These prior dealings, however, did not involve a gun, and Officer Bell could not predict what Mr. Zetterman would do with the gun once he had retrieved it. *Tr.* 45:10-12. Having spoken to Mr. Gorneault, Officer Bell proceeded to Mr. Zetterman's apartment, knocked on his door "a few times," and hollered "Curtis" several times, keeping himself to one side of the door. *Tr.* 11:3-8; 12:17-20. Officer Bell had unholstered his firearm. *Tr.* 11:13-14. Mr. Zetterman came to the door, asked who it was, and Officer Bell told him it was the police. *Tr.* 12:18-20. Mr. Zetterman opened the door. *Tr.* 12:17-20.

Officer Bell asked Mr. Zetterman directly whether he had a firearm, and Mr. Zetterman initially denied, but later admitted it. *Tr.* 12:22-25; 13:1. He denied having it on him. *Tr.* 12:25; 13:1. Officer Bell told Mr. Zetterman that "we weren't doing anything until the weapon was

secure." *Tr.* 13:4-6. Mr. Zetterman said that he would go get it and Officer Bell told him that he should "simply tell me where it was and let me secure the weapon." *Tr.* 13:12-13. Mr. Zetterman repeated that he would go get the weapon and "he stepped back into the apartment and tried to shut the door on me. I stuck my foot forward and prevented the door from closing." *Tr.* 13:14-17.

Once Officer Bell entered the apartment, Mr. Zetterman continued to ignore the Officer's command to stop and allow him to find the weapon. Instead, Mr. Zetterman immediately went into a bedroom and began "rummaging through a box." *Tr.* 13:20-25. Officer Bell continued to tell Mr. Zetterman "to stop, to let me get it, but he didn't stop so at that point, I redrew my weapon and I stepped off to the side probably three or four feet." *Tr.* 14:1-4. Officer Bell was still "barking orders for him to stop. He didn't and as he stood up, I did notice that he had something in his hand, but as soon as I noticed it was in his hand, it was dropped onto the mattress, which is right adjacent to the boxes that he was rummaging through. He then stepped back into the kitchen." *Tr.* 14:12-18. The object turned out to be the small derringer, which had two live rounds. *Tr.* 14:20-25. Just before Officer Bell entered the Zetterman apartment, the unpredictable nature of this encounter was compounded when Mr. Zetterman attempted to shut the door on Officer Bell, leaving the Officer unable to observe Mr. Zetterman's actions inside his apartment.

At this point, "the need for a prompt assessment of . . . ambiguous information concerning potentially serious consequences" arose. *United States v. Beaudoin*, 362 F.3d 60, 66 (1st Cir. 2004) (citing 3 W. LaFave, Search and Seizure, § 6.6(a)). Officer Bell's subsequent actions were fully justified, beginning with the placement of his foot in the door and following Mr. Zetterman into his apartment to prevent an "armed standoff" or a situation where "weapon[s]

[are] fired through a wall into the other apartment that's next door or the apartment that's upstairs." *Tr.* 16:8-10.

The minor factual errors in the Magistrate Judge's Recommended Decision that the Court has sustained change neither the analysis nor the result. Given the situation unfolding before Officer Bell, his warrantless entry into Mr. Zetterman's apartment and his subsequent seizure of the weapon were justified. *See United States v. Martins*, 413 F.3d 139, 146 (1st Cir. 2005); *United States v. Beaudoin*, 362 F.3d 60, 66 (1st Cir. 2004); *see also United States v. Lawlor*, 324 F. Supp. 2d 81, 85-86 (D. Me. 2004) (recognizing that exigent circumstances may arise in "emergency situations" such as the need to protect or preserve life). For the reasons set forth in the Magistrate Judge's Recommended Decision and for the additional reasons set forth in this decision, the Court affirms the Magistrate Judge's Recommended Decision over the Defendant's objections.

## III.  CONCLUSION

1. The Court SUSTAINS the Defendant's objection to the Magistrate Judge's factual finding that Officer Bell "was familiar with Mr. Zetterman because of prior complaints from both Zetterman and others in the neighborhood involving various allegations by Zetterman of neighbors spying on him and resulting arguments and confrontations," and finds instead that Officer Bell "was familiar with Mr. Zetterman because he had been to Mr. Zetterman's apartment in response to prior complaints from Mr. Zetterman or from a neighbor."

2. The Court OVERRULES the Defendant's remaining factual objections as either inaccurate or immaterial.

3. With the exception of the sustained factual objection, it is therefore ORDERED that the Recommended Decision of the Magistrate Judge (Docket # 27) is hereby AFFIRMED.

4. It is further ORDERED that the Defendant's Motion to Suppress Evidence (Docket # 17) is DENIED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 11th day of January, 2010